# Exhibit A

FILED

DEC 1986

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---o0o---

| | | |
|---|---|---|
| YOLANO-DONNELLY TENANT ASSOCIATION, et al., Plaintiffs, vs. SAMUEL R. PIERCE, JR., etc., et al., Defendants. | ) | CIVIL NO. S-86-846 MLS |

MEMORANDUM AND ORDER

This case involves a challenge to a final regulation promulgated by the United States Department of Housing and Urban Development ("HUD"), 51 Federal Register 11198, (April 1, 1986), as amended by a notice published at 51 Federal Register 26876, which restricts certain types of public housing assistance to United States citizens and certain groups of eligible aliens. On September 18, 1986 the court heard defendants' motion to dismiss for failure to state a claim and plaintiffs' motion for a preliminary injunction. This order memorializes the oral rulings made at that hearing.

I. MOTION TO DISMISS

Defendants move to dismiss plaintiffs' complaint on the grounds that it fails to state claims upon which relief may be granted. Fed. R. Civ. Proc. 12(b)(6).

A. Standard

The standard for considering such a motion is well settled. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Ninth Circuit has interpreted this as meaning that dismissal is warranted only if it appears to a certainty that plaintiffs would be entitled to no relief under any state of facts that could be proved. NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The court must accept all of plaintiffs' material allegations as true and construe them in a light most favorable to plaintiffs. "[T]he office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

B. Analysis

Applying these principles, the court concludes that it must deny defendants' motion except with respect to the third claim for relief. However, dismissal of the third claim is with 30 days' leave to amend.

/////



AO 72
(Rev.8/82)

1. Third Claim: Retroactive Application of Statute

The third claim alleges that the challenged regulation violates fifth amendment procedural rights, specifically existing beneficiaries' right to be free from retroactive application of legislation. In this court's view, the regulation operates prospectively only. The regulation establishes eligibility criteria for continued or future housing assistance. The regulation does not attempt to reclaim any benefits already conferred.

Accordingly, the third claim must be dismissed.

2. First and Second Claims: Statutory Construction and Fifth Amendment Claims

Plaintiffs' first claim alleges that HUD's regulation exceeds the scope of the statute it implements and therefore was promulgated in excess of the agency's authority. Plaintiffs' second claim alleges that the regulation violates plaintiffs' right to substantive due process and equal protection under the fifth amendment.

With respect to the fifth amendment claim, the court concludes that depending upon the proof of the facts, or depending upon a further examination of the construction of the law with respect to those claims, plaintiffs may be able to establish a substantive due process and/or equal protection violation under their theory that the regulation allegedly denies the right of a family to cohabit. Such a claim is

supported by the reasoning in Halet v. Wend Investment Co., 672 F.2d 1305 (9th Cir. 1982), Hawaii Boating Ass'n v. Water Transportation Facilities Div., 651 F.2d 661 (9th Cir. 1981) and the original Supreme Court decision addressing the family cohabitation issue, Moore v. City of East Cleveland, 431 U.S. 494 (1977).

Under Halet the court must determine whether the challenged regulation infringes a fundamental right. 672 F.2d at 1311. If it finds a fundamental right has been infringed, it must next determine whether the proposed regulation works a "genuinely significant deprivation" of this right. Id. If those two tests are met, then the court must determine whether the regulation can survive strict scrutiny. Id.

To determine whether a "genuinely significant deprivation" of a fundamental right has occurred, the court must look at the "importance of the nature of the benefit denied." Hawaii Boating Ass'n, 651 F.2d at 665. The penalty must involve a denial of the basic necessities of life or a fundamental political right. Id. Deprivations which are "merely uncomfortable" do not constitute significant deprivations. Id.

In this case, the right to live with one's family is a fundamental right. Halet, 672 F.2d at 1311. Housing, like welfare assistance and medical aid, is a basic necessity. See id. at 665. Depriving an individual of his shelter is a significant penalty to impose for exercising one's right to live with one's family.

Under this reasoning, plaintiffs' second claim states a claim upon which relief may be granted.

Plaintiffs' first claim raises an issue of statutory construction. Because the court must defer to an agency's interpretation of a statute unless that interpretation is "demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute," Olivares v. I.N.S., 685 F.2d 1174, 1177 (9th Cir. 1982), plaintiffs' first claim is very weak. However, the court also has a duty to interpret federal statutes in a way which avoids serious doubts as to their constitutionality. United States v. Grace, 461 U.S. 171, 175-76 (1983), Thompson v. Washington, 497 F.2d 626, 633 (D.C. Cir. 1973) (citing Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 346 (1928)).

Because of the constitutional questions raised by the regulation, the court refuses to dismiss the statutory construction claim at this early point in the proceedings.

3. Fourth Claim: Violation of Notice and "Opportunity to Comment" Requirements

The fourth claim alleges a violation of plaintiffs' right to notice and opportunity to comment on the proposed regulation. Plaintiffs contend that the 1986 regulation is an amended or modified rule subject to the notice and comment requirements in 24 C.F.R. Part 10.

Of particular significance to the court is the length of time between the initial publication of the regulation in the

Federal Register in 1982 and the ultimate version re-published in 1986. Furthermore, the court has been advised that there are ten or twelve, or perhaps more, changes in the new regulation from the one published in 1982.

Brock v. Cathedral Bluffs, 796 F.2d 533 (D.C. Cir. 1986), cited by defendants' counsel during oral argument, does not answer the questions presented in this case. As the court understands the scenario here, the 1982 publication in the Federal Register stated that this was a final rule, that it would take effect upon the expiration of the fi st period of 30 calendar days of continuous session of Congress, subject to waiver, and that further notice of the effective date of the final rule would be published in the Federal Register. That arguably suggests to the public that the 1982 regulation is the final rule that was adopted based upon all of the hearings conducted and comments submitted. It further suggests that the agency had arrived at its final ruling, published it, but for whatever reason -- perhaps because it had been asked to do so, maybe because it was assessing the political climate to see if the law might be changed -- it made the determination that it would postpone the effective date until further notice.

Then, when the new regulation which is under attack here was published, in 1986, there were ten or twelve changes. There is nothing to lead the court to believe that these changes were the result of the public notice and comments that were made in 1982. They might well represent an entire revision of



AO 72
(Rev.8/82)

thinking on the part of the agency, which, if established as a fact, would call for compliance with 24 C.F.R. Part 10 regarding notice and opportunity to comment.

Section 10.3 of these regulations covers general rule making procedures for the issuance, amendment or repeal of the HUD rules. Section 10.8 describes those procedures. If plaintiffs establish violation of Section 10.8 the rule could not be adopted at this time without going back and starting over again. The court finds that these issues are raised adequately by the pleadings and that a set of facts may well be proven which would support plaintiffs' fourth claim.

4. Fifth and Sixth Claims: Violations of the Administrative Procedure Act

The fifth and sixth claims may be considered together. These concern alleged violations of the Administrative Procedure Act. 5 U.S.C. §§ 551 <u>et seq</u>. The court is not satisfied that defendants have adequately addressed these claims in their motion to dismiss or in their opposition to plaintiffs' motion for preliminary injunction. Plaintiffs, too, have addressed those claims only briefly. Under the circumstances, the court has no alternative but to deny the motion to dismiss and defer any kind of analysis on these two claims.

5. Seventh Claim: National Environmental Policy Act

The court denies the defendants' motion to dismiss the claim for relief based upon the National Environmental

Policy Act ("NEPA"). 42 U.S.C. §§ 4321 et seq. NEPA requires that federal agencies prepare environmental impact statements ("EIS's") for major federal actions having a significant effect on the human environment. 42 U.S.C. § 4332. This includes new regulations. See 40 C.F.R. § 1509.18(a).

An agency determines whether to prepare an EIS by examining whether the proposed action:

1. Requires an EIS; or
2. Requires neither an EIS nor an "environmental assessment" (i.e., the action is subject to a "categorical exclusion").

40 C.F.R. § 1501.4(a). A categorical exclusion is a category of action which a federal agency has determined has no effect on the physical environment. 40 C.F.R. § 1508.4. Categorical exclusions are established by adopting regulations. Id.

If an action is not categorically excluded under the agency's regulations, then the agency must prepare an "environmental assessment" ("EA"). 40 C.F.R. § 1501.4(b). An EA is a sort of mini-EIS; it is a brief document which provides sufficient evidence and analysis to enable the agency to determine whether to prepare an EIS or to make a finding of no significant impact ("FONSI"). 40 C.F.R. § 1508.9(a)(1). A FONSI, in turn, is a document which briefly presents the reasons why an action which is not categorically excluded will not have a significant effect on the human environment and why an EIS is therefore not required. 40 C.F.R. 1508.13. As a document, a

FONSI must include either a copy of the environmental assessment or a summary of it. Id.

Plaintiffs argue that the FONSI prepared for the 1982 regulation did not contain either an EA or even refer to an EA. Plaintiffs have also submitted a declaration which indicates that displacement of the class of people plaintiffs undertake to represent can create significant effects on the physical environment. For these reasons, the court concludes that plaintiffs have stated a claim upon which relief may be granted.

6. Eighth Claim: Regulatory Flexibility Act

Plaintiffs' final claim is that the actions HUD took to fulfill its obligations under the Regulatory Flexibility Act, 5 U.S.C. § 601 et seq., were unsupported by fact and constitute an abuse of discretion. Defendants argue that HUD's compliance with the Act is not subject to judicial review.

The statutory background and the issues in general are well summarized in Small Refiners Lead Phase Down Task Force v. U.S.E.P.A., 705 F.2d 506, 537-39 (D.C. Cir. 1983); see also Mid-Tex Electric Co-op., Inc. v. FERC, 773 F.2d 327, 340-43 (D.C. Cir. 1985), Thompson v. Clark, 741 F.2d 401, 404-08 (D.C. Cir. 1984) (the Regulatory Flexibility Act may be considered as part of the overall judgment whether a rule is reasonable under the APA). After carefully considering these authorities, the court finds that plaintiffs may be able to prove facts which would establish a violation of the Regulatory Flexibility Act.

## II. MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction enjoining defendants and their officers, agents and employees from implementing or enforcing the regulations during the pendency of this litigation.

### A. Preliminary Injunction Standard

There are two tests for determining the propriety of a preliminary injunction. The moving parties must show _either_:

1. A combination of probable success on the merits and the possibility of irreparable injury; _or_
2. Serious questions raised on the merits with the balance of hardship tipping sharply in favor of the moving party.

_Hartikka v. United States_, 754 F.2d 1516, 1518 (9th Cir. 1985); _Wm. Inglis and Sons Baking v. ITT Continental Baking Co._, 526 F.2d 86, 88 (9th Cir. 1975).

These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. _Oakland Tribune, Inc. v. Chronicle Publishing Co._, 762 F.2d 1374, 1376 (9th Cir. 1985). At any point on the continuum, however, plaintiff must demonstrate the existence of a serious threat of irreparable injury. _Id_.

### B. Analysis

Based upon the allegations of the complaint and the facts before the court, the court concludes that it must grant

the plaintiffs' motion for a preliminary injunction. It finds that plaintiffs have raised serious questions on the merits of this case with respect to at least three of their claims: (1) The second claim based on the fifth amendment right to cohabit with one's family, (2) the fourth claim based on the requirements of 24 C.F.R. Part 10 for notice and an opportunity to comment on amendments to and modifications of existing regulations, and (3) the seventh claim based on NEPA's requirement that an agency prepare an environmental assessment before making a finding that its acts will have no significant effect on the environment.

Turning to the second part of the test, the court finds that the balance of hardship tips sharply in the plaintiffs' favor. The hardships caused by losing/being denied housing assistance or being forced to separate from a family member is considerably greater than any hardship the government might suffer from having to delay implementation of a regulation which has already been delayed for nearly four years.

This being the case, plaintiffs have satisfied the requirements for a preliminary injunction. After the September 19 hearing this injunction applied only to the named plaintiffs. However, after a subsequent hearing held on November 14, 1986, the court granted plaintiffs' motion for certification of this action as a class action on behalf of the class defined as follows:

/////

LODGED

DEC 1 2 1986

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY

FILED

1986

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANO-DONNELLY TENANT ASSOCIATION, et al., Plaintiffs, vs. SAMUEL R. PIERCE, JR., in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al. Defendants. | NO. CIV S-86-846-MLS<br><br>ORDER CERTIFYING NATIONWIDE CLASS AND EXTENDING PRELIMINARY INJUNCTION |

On November 14, 1986, plaintiffs' Motion for Class Certification came before the Honorable Milton L. Schwartz, Judge of the United States District Court for the Eastern District of California. David Pallack, of San Fernando Valley Neighborhood Legal Services, Inc., and Stephen Rosenbaum, of California Rural Legal Assistance, appeared for plaintiffs, and Jeffrey S. Paulsen, Trial Attorney, Department of Justice, appeared for defendants. The Court, having considered the briefs, having heard oral argument, and having fully considered the matter, makes the following ruling.

The Court grants plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23(a) and 23(b)(2). The Court finds that the class is so numerous that joinder is impracticable, that there are questions of law common to the class, that the claims of the representative parties are typical of the claims of the class, and that the representatives will fairly and adequately protect the interests of the class. The Court also finds that defendants have acted and refused to

act on grounds generally applicable to the class, thereby making final injunctive and declaratory relief with respect to the whole class appropriate.

The Court finds that the class should be certified as a nationwide class, given the nationwide nature of the violations claimed. The Court finds that certification of a nationwide class will not improperly interfere with the litigation of similar issues in the case of *The City of New York, et al v. Samuel R. Pierce, Jr., et al*, No. 86-CIV 6068 (LLS), currently filed in the United States District Court for the Southern District of New York, because that case is presently in a dormant state, and because the parties to that case have stipulated to a stay of those proceedings pending this Court's resolution of the Motion for Class ~~certifiction.~~ Certification.

The scope of the class is:

> "All United States citizens and 'eligible aliens' as defined in 42 U.S.C. §1436a nationwide who would be eligible, either presently or prospectively, for subsidized housing under the United States Housing Act of 1937, §235 or §236 of the National Housing Act, or §101 of the Housing and Urban Development Act of 1965, but for the presence in the family of an adult who is an ineligible alien."

/ / /

/ / /

/ / /

The Court finds support in its ruling from, inter alia, Califano v. Yamasaki, 442 U.S. 692 (1979) and Federal Rule of Civil Procedure 23(c)(1).

The Court also extends the preliminary injunction previously granted on September 18, 1986, to the entire class. HUD and its agents are enjoined from enforcing the April 1, 1986 regulation (51 Fed. Reg. 11198) as to all members of the class. This injunction shall remain in effect during the pendency of this case, unless modified by the Court prior to judgment.

IT IS SO ORDERED.

DATED: DECEMBER 18, 1986.

Milton L. Schwartz

MILTON L. SCHWARTZ
United States District Judge